UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RANDY ABBAS,

                      Plaintiff,

-against-

HESTIA TOBACCO, LLC; and DAVID SLEY,

                      Defendants.

No. 1:18-cv-05151-ENV-RER

**AMENDED COMPLAINT**

       Plaintiff RANDY ABBAS ("Abbas"), by his attorneys FisherBroyles, LLP, for his Amended Complaint, alleges:

       1.     This action is brought to recover on a loan made by Abbas in the principal sum of $1,000,000 (plus accrued interest, costs and attorneys' fees) to Defendant HESTIA TOBACCO, LLC ("Hestia") and personally guaranteed by Hestia's Founder and CEO Defendant DAVID SLEY ("Sley"), which is in default. Abbas has asserted claims for breach of the Amended and Restated Note executed by Hestia, breach of the Guaranty executed by Sley, breach of implied or quasi-contract, fraudulent inducement, promissory fraud (under California law which governs the Amended and Restated Note and Guaranty), and conspiracy to commit fraud.

## JURISDICTION AND VENUE

       2.     Abbas is an individual residing at 167 Huntington Street, Brooklyn, NY 11231, within the Eastern District of New York.

       3.     Upon information and belief, Hestia is a Nevada limited liability company, having its principle office for the conduct of business located at 530 Foster Street, Suite 531,

1

Durham, NC 27702.

4. Upon information and belief, Sley is an individual domiciled in the State of California with a residence located at 653 Indiana Avenue, Venice, CA 90291, and/or Santa Monica, California. According to his LinkedIn profile, Sley is the Founder and CEO of Hestia, and upon information and belief, is a principle shareholder or the sole shareholder of Hestia.

5. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as Abbas, on the one hand, and Defendants, on the other hand, are citizens of different states, and the matter in controversy exceeds the sum of $75,000.

6. Venue is proper in this district pursuant to the forum selection clauses in the subject note and guaranty.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

### A. Defendant Hestia Purportedly Sought A Short-Term Loan

7. In or about May 8, 2018, Sley approached Abbas through an intermediary seeking a short-term loan for Hestia in the principal sum of $1,000,000, ostensibly for its tobacco business which was between cash payments.

8. Sley represented that Hestia would need the loan for only one month, at which time Hestia would make complete and full repayment with accrued interest.

9. Based upon these representations, Abbas agreed to loan Hestia the principal sum of $1,000,000.

10. Hestia thereupon drafted and delivered to Abbas a promissory note in the principal sum of $1,000,000, dated May 8, 2018, executed on behalf of Hestia by Sley as CEO of Hestia, with repayment to be made in full within 30 days – a maturity date of on or before June 8, 2018.

2

11. Abbas thereupon wired $1,000,000 to Hestia's bank account on May 9, 2018.

12. Three days later, on or about May 12, 2018, Sley became married and thereupon spent 10 days on a honeymoon in Bora Bora. As explained in detail below, notwithstanding that the loan was made by Abbas to Hestia as evidenced by the promissory note created and executed by Hestia, and that Abbas was told and understood that it was a loan made to Hestia for Hestia's business purposes, Abbas did not discover until after the ultimate default on the loan, described in detail below, that neither Hestia nor Sley ever intended that Hestia would be the beneficiary of any of the funds represented by the promissory note. Indeed, upon information and belief, at all relevant times the intention of Hestia and Sley was that Sley would use these funds for his own personal benefit and the benefit of his new wife to pay for their wedding and honeymoon - a fact that Abbas did not discover until after the ultimate default on the loan, described in detail below.

13. Besides breaching the relevant loan and guaranty documents by failing and refusing to make repayment of the $1,000,000 loan, Hestia and Abbas, jointly and severally, conspired to and did perpetrate a fraud upon Abbas, as well as upon creditors of Hestia, by falsely promising that Hestia would repay the loan and intentionally improperly diverting the loan funds to the personal use of Sley and his wife.

B. **Defendant Hestia Defaults On The Loan**

14. Hestia failed to repay the loan on or before the maturity date, June 8, 2018.

15. On the maturity date, Sley represented to Abbas in an email that his funds were not at risk but that Hestia could not make repayment on that date because of a delay in the purported underlying Hestia corporate transaction:

> "As I think it's been mentioned, between incorporating in GC, opening up a GC acct w BNP Paribas, syndicating the mitigated insured risk of the PO through Lloyd's of London w the Busch crew (Hestia's financiers for this project), etc - my lawyers and accountants haven't finished. They said they

would. They haven't. The contracts are signed and your assets aren't at risk, but they're not in your acct, and that's on me. As of midnight tonight, I'm out of time, and interest will continue accruing against Hestia Tobacco LLC at the maximum rate, per our contact, and of course I'll honor every cent of that."

16. On June 11, 2018, Sley represented that he had a call with respect to Hestia's underlying corporate transaction, and stated: "I expect to come back to you with a Fed ref # from that. And if not, a specific red line number of days (as in, 3 or 4) it will take them to finish," and on June 12, 2018 claimed that repayment of the $1,000,000 loan by Hestia would be made on June 14, 2018, or June 15, 2018.

17. On June 15, 2018, Sley claimed to Abbas in an email that the broker in the underlying Hestia corporate transaction was "standing by with funds" but had not yet received information to open a bank account needed to wire the funds.

"Just got off the phone with the Busch fam ofc - they are standing by with the funds but hadn't received any acct opening info from BNP, so funds are still with them. Trying to see where the communication dropped, and get this wire set up for you."

18. On June 20, 2018, Sley claimed in an email to Abbas that payment from Hestia would be made "with absolute certainty" by July 1, 2018, and stated that if Hestia could not make repayment from its underlying corporate transaction, Sley would "have to make the call to my parents."

"Thus far, I have passed along and relied upon the information given to me, and that's led to my failing to deliver multiple times. Third-world dealings, etc. My problem. Not yours. It's my understanding that it's been a mix of Ramadan delays in Morocco regarding documentation / certification (which just ended Friday), my lead investor, Daniel Hahn hosting this Mayshad Festival in Marrakech (the one I invited you to, Daniel) — and being difficult to reach, and just a general breakdown in communication.

If I were to continue passing along this information, I'd tell you Thursday, which is what Jacob Busch, the family liaison overseeing this, told me yesterday.
So, here's what I CAN say with absolute certainty — By July 1, I'll have our

4

account settled in full, either through this funding, or I'll have to make the call to my parents."

### C. Sley Lies About The Delay In Payment And Falsifies Bank Communications

19. On July 6, 2018, Sley emailed Abbas that he had been silent for the previous weeks to "avoid a lack of candor" – *i.e.*, to avoid lying to Abbas. In attempting to confirm that there was indeed an underlying Hestia corporate transaction from which the loan from Abbas would be repaid, Sley sent to Abbas corporate documents purporting to explain Hestia's underlying corporate transaction:

> "I've enclosed the 3 most pertinent documents backing up your money.
> 1) a 55MM USD Purchase Order from Habanos S.A. to my company, Hestia Tobacco LLC
>
> 2) The executed Agreement between Hestia and Habanos for 11MM in volume per month
>
> 3) The executed Agreement between Hestia and Daniel Hahn, acting on behalf of his investment vehicle, to provide initial funding to fulfill the aforementioned PO and ongoing Agreement."

20. On a telephone call later that day, July 6, 2018, Sley was asked to answer the question whether "if funding doesn't come from existing creditor (Daniel Hahn), what are the options and timelines? At what point do Sley's parents provide funding?" On that telephone call, Sley represented and confirmed to Abbas that the funds were being used for Hestia business purposes and that the delay in repayment was based on the other side delaying payment to Hestia. Sley said that he felt embarrassed and that he would ask his father to pay the debt on Hestia's behalf.

21. On July 10, 2018, Sley emailed Abbas that he was "[a]waiting my father's wire to

5

clear" Hestia's account at JPMorgan Chase ("JPM") and on July 11, 2018, Sley emailed Abbas that he had received a wire from his father and was waiting for the wire transfer to clear, and that he would then make a wire transfer payment to Abbas.

22. On July 11, 2018, Sley emailed Abbas again, this time claiming that he had attempted to send a wire transfer to Abbas, but that because he did this before his father's wire transfer had cleared Hestia's bank account, JPM's fraud department therefore stopped the wire transfer out of a concern for fraud. He attached what was later discovered to be an altered "screenshot" of his purported bank balance of $1,601,445.654 which purported to show that Sley's father had wired into Hestia's bank account sufficient funds to repay Abbas.

23. On July 17, 2018, Sley sent to a colleague of Abbas an email containing a false and fraudulent federal reference number within a falsified confirmation email purporting to come from JPM's official email address. Apparently, Sley had altered and "customized" the standard Chase wire confirmation receipt to conform to Abbas' information.

24. Sley sent to Abbas' colleague on July 20, 2018 what Abbas later confirmed with the bank to be a new, false federal reference number. That number was completely different from the July 17, 2018 federal reference number.

25. Abbas made daily inquiries to his own bank, Citibank, from July 11, 2018 until July 25, 2018 and at no time was there evidence of a wire transfer made by Hestia.

D. **Sley Admits That His Delay Was A "Rudimentary Fiction To Buy Time" And Claims To Be "Ashamed and Embarrassed"**

26. On July 25, 2018, Sley emailed Abbas and explained that after July 6th he called his father to explain his "predicament" and "the difficulties caused by the Busch family office delays." Sley said that his father "said he needed the weekend to think it over and discuss the

situation with my mother. On Monday he said he would begin selling the necessary stocks to initiate this. Tuesday, he backtracked. I can only imagine my mother got to him."

27. He then stated that "Accordingly, my delays for the past 2 weeks have been a rudimentary fiction to buy time. I remain ashamed and embarrassed of my actions. I make no excuse." Sley then resurrected "the Busch family" as a purported source of repayment:

> "Funding from the Busch family finally arrived into our BVI SVP last Friday, July 20, and I immediately re-submitted our promissory note, along with the request to wire the funds to you, as they maintain a modicum of oversight through these primary stages. And they have said they would attend to the request ASAP."

28. Sley continued to represent that Hestia had every intention of repaying the loan to Abbas, from two different identifiable sources. Abbas therefore sent to him, on August 9, 2018, an "Amended and Restated Promissory Note" for Hestia ("Amended Note") which extended the maturity date. He also sent to Sley a "Guaranty Agreement" to be executed by Sley, in which he personally guaranteed payment by Hestia on the Amended Note ("Guaranty").

### E. Amended and Restated Promissory Note and Guaranty Agreement And Default By Defendants

29. On August 10, 2018, Sley returned to Abbas the Amended Note executed by Sley on behalf of and as CEO of Hestia, and the Guaranty executed by Sley. A true and complete copy of the executed Amended Note is annexed hereto as Exhibit A. A true and complete copy of the executed Guaranty is annexed hereto as Exhibit B.

30. The Amended Note, dated August 10, 2018, provided, *inter alia*, that:

> The maturity date for repayment of principal and all accrued and unpaid interest on the $1,000,000 loan was "five (5) business days after the date of this Note," *i.e.*, August 17, 2018.
>
> The entire unpaid principal balance and accrued and unpaid interest shall bear an annual interest rate of 10%.
>
> The Amended Note and its performance was to be guaranteed by Sley.

7

Nonpayment of the principal and/or interest under the Amended Note on the maturity date would be deemed an event of default.

Hestia is obligated to pay costs, expenses and attorneys' fees paid or incurred by Abbas in any effort to collect or enforce on the Amended Note, including without limitation, litigation.

The Amended Note shall be governed by and construed in accordance with the laws of the State of California.

Hestia agreed to submit to personal jurisdiction in the State of New York in any litigation to collect or enforce on the Amended Note, and agreed that any such litigation shall exclusively be brought in any state or federal court of competent jurisdiction in the State of New York, within the City of New York.

31.  The Guaranty, dated August 10, 2018, provided, *inter alia*, that:

Sley's liability under the Guaranty is primary and unconditional.

Sley guaranteed the prompt payment and timely enforcement of all liabilities, obligations and duties imposed upon Hestia under the terms of the Amended Note, as fully and to the same extent as if he had executed the Amended Note as Hestia thereunder.

Sley waived, among other things, notice of default by Hestia under the Amended Note.

Sley agreed that Abbas shall not be first required to enforce against Hestia any liability, obligation or duty guaranteed before seeking enforcement thereof against Sley.

Sley guaranteed that if Abbas shall engage an attorney to present, enforce or defend his rights and remedies under the Guaranty, then Sley shall pay any reasonable attorneys' fees, related legal expenses and costs of court incurred by Abbas in connection therewith.

Sley shall not be entitled to make any defense against any claim asserted by Abbas in any litigation to enforce the Amended Note or Guaranty, and expressly waived any defense in law or equity that is not nor would not be available to Hestia.

Sley's obligations shall not be subject to any counterclaim, set-off, deduction, diminution, abatement, recoupment, suspension, deferment, reduction or defense based upon any claim he may have against Abbas or any other person.

The Guaranty shall be governed by and interpreted under the laws of the State of California. Exclusive venue for any action arising out of the Guaranty shall be the state and federal courts situated in the City of New York.

32.  Hestia failed and refused to make payment under the Amended Note at the

maturity date - five (5) business days after the date of the Amended Note, *i.e.*, August 17, 2018 – which constituted an event of default under the Amended Note.

33. Sley failed and refused to make payment under the Guaranty at the maturity date five (5) business days after the date of the Amended Note, *i.e.*, August 17, 2018 – which constituted an event of default under the Guaranty.

34. Despite oral and written demands for payment, although not conditions precedent for enforcement or collection under either the Amended Note or Guaranty, and although neither Hestia nor Sley had a right to cure the default, Hestia has failed and refused to make payment under the Amended Note, and Sley has failed and refused to make payment under the Guaranty.

35. There is now due and owing from Defendants, jointly and severally, the principal sum of $1,000,000 plus interest, costs and expenses, and legal fees.

**F. Sley's Fraudulent Inducement in Procuring The Loan is Discovered**

36. After the default by Hestia and Sley under the Amended Note and Guaranty, Abbas discovered that neither Hestia nor Sley ever had any intention that Hestia would receive or utilize the proceeds of the $1,000,000 loan funds for any purpose, as Sley had represented. Instead, at all relevant times, Defendants intended that the proceeds of the $1,000,000 loan funds were to be used *personally* by Sley to pay for the expenses incurred by he and his wife for their wedding and honeymoon.

37. After the default by Hestia and Sley under the Amended Note and Guaranty, Abbas discovered a May text message from Sley to Abbas' colleague, that Sley stated that, with respect to the loan of $1,000,000, "I need it in JPM to pay f _ _ _ ing wedding vendors ASAP." As to how the loan would be repaid, Sley represented that if the "Busch family," with which Sley purportedly had conducted some business, "breaches their contract [] [a]t which point I can sue

9

for non-performance. And frankly, at which point I would hit up my dad and explain the situation."

38. Upon information and belief, Sley fraudulently represented that Hestia needed the $1,000,000 loan for legitimate business purposes, and executed the original promissory note on behalf of Hestia in order to fraudulently induce Abbas to extend the $1,000,000 loan to Hestia, and thereafter fraudulently represented to Sley that funds due and owing Hestia were imminently available for repayment of Abbas' loan in order to fraudulently induce Abbas to extend the maturity date of the loan and accept Hestia's Amended Note and his own personal Guaranty

39. Upon information and belief, in June, July and August Sley repeatedly lied about and fraudulently misrepresented to Abbas the source of the funds from which Hestia would purportedly repay the loan and the events and occurrences that had to take place before the loan could be repaid, and sent to Abbas purported bank communications that he had fraudulently altered in order to induce Abbas to extend the maturity date under the Amended Note.

### AS AND FOR A FIRST CLAIM FOR RELIEF

#### (Breach of Contract by Hestia)

40. Abbas repeats and realleges each of the preceding paragraphs as if fully set forth herein. pursuant to the Amended Note, Hestia was responsible for the payment and performance of all of its obligations, including full and complete payment.

41. Hestia defaulted under the Amended Note and is therefore liable to Abbas in the principal sum of $1,000,000 plus applicable accrued interest plus costs, expenses and attorneys' fees paid or incurred by Abbas.

42. By the terms of the Amended Note, Hestia waived all defenses to payment of the amounts due and owing under it.

43. Hestia's failure and refusal to make repayment under the Amended Note constitutes a breach of the Amended Note.

## AS AND FOR A SECOND CLAIM FOR RELIEF

### (Quasi-Contract/Quantum Meruit against Defendants)

44. Abbas repeats and realleges each of the preceding paragraphs as if fully set forth herein.

45. By their respective actions, Abbas and Defendants entered into an implied or quasi-contract whereby Abbas agreed to loan $1,000,000 to Defendants and Defendants agreed to repay the loan amount together with interest thereon.

46. Defendants enticed and fraudulently induced Abbas into making the $1,000,000 loan through false and misleading representations regarding the identity of the borrower, the commercial use of the loan proceeds and the Defendants' repayment of the loan.

47. Where, as here, a party or parties are unjustly enriched by the acquisition of property of another, the law creates a quasi-contractual obligation by the party unjustly enriched to compensate the owner of the property for the reasonable value of the property received.

48. Defendants breached the implied or quasi-contract by refusing to repay to Abbas the principal amount of the loan and refusing to pay interest accrued thereon during the Defendants' use of the loan proceeds.

49. Defendants would not have obtained the $1,000,000 loan from Abbas were it not for their wrongful conduct.

50. Abbas has been harmed and has sustained damages by the Defendants' breach of the implied or quasi-contract. Having unjustly and wrongfully obtained Abbas' property, Defendants' continued retention of the $1,000,000 loan proceeds (and accrued interest thereon)

would be inequitable and unjust.

51. Equity and good conscience require that Defendants, jointly and severally, provide Abbas with fair and reasonable restitution in the amount in which they were unjustly enriched.

## AS AND FOR A THIRD CLAIM FOR RELIEF

### (Breach of the Guaranty against Sley)

52. Abbas repeats and realleges each of the preceding paragraphs as if fully set forth herein.

53. Sley's liability under the Guaranty is primary and unconditional.

54. As set forth above in detail, under the Guaranty, Sley guaranteed the prompt payment and timely enforcement of all liabilities, obligations and duties imposed upon Hestia under the terms of the Amended Note, as fully and to the same extent as if he had executed the Amended Note as Hestia thereunder.

55. As set forth above in detail, under the Guaranty, Sley agreed that Abbas shall not be first required to enforce against Hestia any liability, obligation or duty guaranteed before seeking enforcement thereof against Sley.

56. Hestia defaulted under the Amended Note and Sley defaulted under the Guaranty, and Sley is therefore liable to Abbas under the Guaranty in the principal sum of $1,000,000 plus applicable accrued interest plus costs, expenses and attorneys' fees paid or incurred by Abbas.

57. Sley's failure and refusal to make payment under the Guaranty constitutes a breach of the Guaranty.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

### (Fraud in the Inducement against Defendants)

58. Abbas repeats and realleges each of the preceding paragraphs as if fully set forth herein.

59. As set forth in detail above, Defendants, jointly and severally, made knowing and false representations to Abbas about the loan, the identity of the true borrower, the disposition of the loan proceeds, and the intention and source of funds to repay the loan and comply with the terms of the Amended Note and Guaranty, with the intent to deceive him and/or to induce reliance by him.

60. In justifiable reliance upon the knowing and false representations, Abbas was damaged by making a $1,000,000 loan to Hestia.

61. Hestia's failure and refusal to make repayment under the Amended Note, and Sley's failure and refusal to make repayment under the Guaranty constitutes fraud.

## AS AND FOR A FIFTH CLAIM FOR RELIEF

### (Promissory Fraud against Defendants)

62. Abbas repeats and realleges each of the preceding paragraphs as if fully set forth herein.

63. As set forth in detail above, Defendants, jointly and severally, made knowing and false representations to Abbas that the loan was to be made to Hestia and would be repaid by Hestia, with the intent to deceive him and/or to induce reliance by him, and in justifiable reliance upon the knowing and false representations Abbas was damaged.

64. Upon information and belief, Hestia had no intention of repaying the loan to Abbas.

65. Hestia's failure and refusal to make repayment under the Amended Note, and Sley's failure and refusal to make repayment under the Guaranty constitutes promissory fraud under the California law governing enforcement and collection under the Amended Note and the Guaranty.

## AS AND FOR A SIXTH CLAIM FOR RELIEF

### (Conspiracy to Commit Fraud By Defendants)

66. Abbas repeats and realleges each of the preceding paragraphs as if fully set forth herein.

67. As set forth in detail above, Defendants, jointly and severally, and in concert and conspiracy, made knowing and false representations to Abbas with the intent to deceive him and/or to induce reliance by him, that the loan was to be made to Hestia and would be repaid by Hestia.

68. In justifiable reliance upon the knowing and false representations, Abbas was damaged.

69. Defendants' knowing and false representations to Abbas made in concert constituted conspiracy to commit fraud against Abbas.

**WHEREFORE,** Abbas respectfully requests that judgment be entered in his favor against Defendants, jointly and severally, with respect to each and every Claim for Relief, in the principal sum of $1,000,000 plus applicable accrued interest plus costs, expenses and attorneys' fees paid or incurred by him, plus punitive damages on the Fourth, Fifth, and Sixth Claims for Relief in the amount of $5,000,000, plus such other and further relief as this Court may deem just and proper.

Date: December 20, 2018
     New York, New York

FISHERBROYLES LLP

By: _____

Richard B. Cohen, Esq.
Christina H. Bost Seaton, Esq.
445 Park Avenue, Ninth Floor
New York, New York 10022
(221) 247-6122
Richard.Cohen@fisherbroyles.com
Christina.BostSeaton@fisherbroyles.com
*Attorneys for Plaintiff*