**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Served on February 11, 2019

RANDY ABBAS,

Plaintiff,

Case No. 18-cv-05151
(ENV)(RER)

-against-

HESTIA TOBACCO, LLC; and DAVID SLEY,

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR PARTIAL DISMISSAL OF THE AMENDED COMPLAINT**

**FISHERBROYLES LLP**

445 Park Avenue, Ninth Floor
New York, NY 10022

Richard B. Cohen, Esq.
Christina Bost Seaton, Esq.
(212) 247-6122
(203) 887-4665
Richard.Cohen@FisherBroyles.com
Christina.BostSeaton@FisherBroyles.com

Counsel for Plaintiff Randy Abbas

1

# Table of Contents

PRELIMINARY STATEMENT ..................................................................................... 5

STATEMENT OF FACTS ........................................................................................... 5

DEFENDANTS' MOTION .......................................................................................... 8

POINT I: CALIFORNIA LAW PERMITS THE ALTERNATIVE PLEADING OF AN EXPRESS CONTRACT, AS WELL AS BOTH PROMISSORY FRAUD AND QUASI-CONTRACT/*QUANTUM MERUIT* ...................................................................... 10

    A.  Promissory Fraud ......................................................................................... 10

    B.  Quasi-contract/*quantum meruit* ................................................................. 14

POINT II: FRAUD IN THE INDUCEMENT HAS BEEN ADEQUATELY AND SUFFICIENTLY PLEADED ................................................................................. 18

POINT III CIVIL CONSPIRACY TO COMMIT FRAUD HAS BEEN SUFFICIENTLY PLEADED ............................................................................................................ 19

POINT IV A CORPORATION'S EMPLOYEE OR AGENT CAN CONSPIRE WITH THE CORPORATION WHILE ACTING FOR HIS PERSONAL ADVANTAGE ........................... 20

CONCLUSION ........................................................................................................ 21

## Cases

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd* (1994) 7 Cal. 4th 503 ................................ 18

*Black v. Bank of Am. N.T. & S.A.* (1994) 30 Cal. App. 4th 1 ........................................ 20

*Chavers v. Gatke Corp.* (2003) 107 Cal. App.4th 606 .................................................. 18

*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal. App. 4th 292...................... 11

*Denevi v. LGCC* (2004) 121 Cal. App. 4th 1211 ........................................................ 10

*Diamond Woodworks, Inc. v. Argonaut Ins. Co.* (2003) 109 Cal. App. 4th 1020 ........................ 10

*Durell v. Sharp Healthcare* (2010), 183 Cal. App. 4th 1350...................................... 16

*Fagan v. U. S. Carpet Installation, Inc.*, 770 F. Supp. 2d 490, 496 (E.D.N.Y. 2011) ................ 15

*Geraghty v. Shalizi* (2017) 8 Cal. App. 5th 593.......................................................... 10

*Lazar v. Superior Court,* (1996) 12 Cal. 4th 631 .......................................................... 9

*McBride v. Boughton* (2004) 123 Cal. App. 4th 379 ....................................... 14, 15, 16

*Mendoza v. Continental Sales Co.* (2006) 140 Cal. App. 4th 1395 ............................... 14

*Newport Harbor Ventures LLC* (2016) 6 Cal. App. 5th 1207 ...................................... 15

*Pro Value Properties, Inc. v. Quality Loan Service Corp.* (2009) 170 Cal. App. 4th 579 ........... 15

*Roam v. Koop* (1974) 41 Cal. App. 3d 1035................................................................ 10

*Robinson Helicopter Co.v. Dana Corp.* (2004) 34 Cal. 4th 979........................................ 11, 12

*Rosenthal v. Great Western Financial Securities Corp.* (1996) 14 Cal. 4th 394 ...................... 17

*Shell v. Schmidt* (1954) 126 Cal. App. 2d 279 ............................................................ 10

*Small v. Fritz Companies, Inc.* (2003) 30 Cal. 4th 167 ................................................ 9

*Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group*, 143 Cal. App. 4th 1036 .......... 13

*United Guar. Mortg. Indemn Co. v. Countrywide Fin. Corp.*, 660 F. Supp.2d 1163 (C.D. Ca. 2009) ................................................................................................................ 11

*Waffer International Corp v. Khorsandi* (1999) 69 Cal. App 4th 1261 ........................................ 10

*Weitzenkorn v. Lesser* (1953) 40 Cal. 2d 778 .............................................................. 14

*Zumbrun v. Univ. of S. Cal.* (1972) 25 Cal. App 3d 1 .................................................... 19

## Statutes

Cal Civ Code § 1709.............................................................................................. 11

Cal Civ Code § 1710........................................................................................... 9, 11

Cal Civ Code §1572............................................................................................ 9, 12

## Rules

FRCP Rule 8 ...................................................................................................... 16

FRCP Rule 8(d)............................................................................................... 15, 16

FRCP Rule 9 ........................................................................................................ 8

## PRELIMINARY STATEMENT

Plaintiff RANDY ABBAS ("Abbas" or "Plaintiff"), by his attorneys FisherBroyles, LLP, hereby submits this memorandum of law in opposition to the motion made by Defendants to dismiss Counts II, IV, V and VI of the Amended Complaint.

## STATEMENT OF FACTS

The Court is respectfully referred to the attached Amended Complaint (Exhibit A) for a complete recitation of the facts of this case.

In brief, this action is brought to recover on a loan made by Abbas in the principal sum of $1,000,000 (plus accrued interest, costs and attorneys' fees) to Defendant HESTIA TOBACCO, LLC ("Hestia"), and personally guaranteed by Hestia's Founder and CEO Defendant DAVID SLEY ("Sley"), which loan is in default.

In or about May 8, 2018, Sley approached Abbas through an intermediary seeking a short-term loan *for Hestia* in the principal sum of $1,000,000, ostensibly for its tobacco business which was between cash payments. Sley represented that Hestia would need the loan for only one month, at which time Hestia would make complete and full repayment with accrued interest. Based upon these representations, Abbas agreed to loan Hestia the principal sum of $1,000,000. Hestia thereupon drafted and delivered to Abbas a promissory note in the principal sum of $1,000,000, dated May 8, 2018, executed on behalf of and in the name of Hestia as borrower (and signed by Sley as CEO of Hestia), with repayment to be made in full within 30 days – a maturity date of on or before June 8, 2018. Abbas wired these funds to *Hestia's account* on May 9, 2018.

Notwithstanding that all of the representations made to Abbas – including, most importantly, the name of the borrower on the promissory note itself - that the loan was to be

5

made to Hestia, for Hestia's business purposes, Abbas did not discover until *after* the ultimate

default on the loan, as described in detail in the Amended Complaint, that neither Hestia (nor

Sley) ever intended that Hestia would be the beneficiary of any of the funds represented by the

promissory note or that the borrowed funds were for Hestia's business purposes.  Indeed, upon

information and belief, at all relevant times the intention of Hestia and Sley was that Sley would

use these funds for his own *personal benefit* and the benefit of his new wife to pay for their

wedding (which occurred three days after the loan was made) and honeymoon.

As described with specificity and virtually in all cases verbatim in the Amended

Complaint – demonstrated by the numerous dated and quoted emails sent by Sley to Abbas –

Sley repeatedly and falsely told Abbas after Hestia defaulted on the loan on June 8, 2018 that

Hestia was always on the verge of finalizing corporate transactions from which it would repay

Abbas (for example, by email of June 15, 2018, Sley said that the broker in the underlying Hestia

corporate transaction was "standing by with funds").[1]

After a number of these emails, Sley turned to falsely claiming that *his father* would be

the source of repayment of the loan, and even that his father had already wired Sley repayment

funds.  For example, on July 11, 2018, Sley emailed Abbas that he had received a wire from his

father and was waiting for the wire transfer to clear Hestia's account at JPMorgan Chase, and

that he would then make a wire transfer payment to Abbas. Amended Complaint at par. 21.

---

[1] Sley: "Just got off the phone with the Busch fam ofc - they are standing by with the funds but
hadn't received any acct opening info from BNP, so funds are still with them. Trying to see
where the communication dropped, and get this wire set up for you." Amended Complaint at par.
17.

Sley's lying turned to apparent outright bank and/or wire fraud, as pleaded with specificity in the

Amended Complaint at pars. 21-23:

> On July 11, 2018, Sley emailed Abbas again, this time claiming that he had attempted to send a wire transfer to Abbas, but that because he did this before his father's wire transfer had cleared Hestia's bank account, JPM's fraud department therefore stopped the wire transfer out of a concern for fraud. He attached what was later discovered to be an altered "screenshot" of his purported bank balance of $1,601,445.654 which purported to show that Sley's father had wired into Hestia's bank account sufficient funds to repay Abbas.
>
> On July 17, 2018, Sley sent to a colleague of Abbas an email containing a false and fraudulent federal reference number within a falsified confirmation email purporting to come from JPM's official email address. Apparently, Sley had altered and "customized" the standard Chase wire confirmation receipt to conform to Abbas' information.
>
> Sley sent to Abbas' colleague on July 20, 2018 what Abbas later confirmed with the bank to be a new, false federal reference number. That number was completely different from the July 17, 2018 federal reference number.

On July 25, 2018, Sley emailed Abbas and, after admitting to his previous lies,

resurrected another false representation that funds to repay the loan *had been received*: "my

delays for the past 2 weeks have been a rudimentary fiction to buy time. I remain ashamed and

embarrassed of my actions. I make no excuse. ... Funding from the Busch family finally arrived

into our BVI SVP last Friday, July 20, and I immediately re-submitted our promissory note,

along with the request to wire the funds to you, as they maintain a modicum of oversight through

these primary stages. And they have said they would attend to the request ASAP." *Id.* at par. 27.

On August 9, 2018, to extend the maturity date for the Hestia loan and obtain a personal

guaranty from Sley, Abbas sent to Hestia an "Amended and Restated Promissory Note"

("Amended Note"), and to Sley a "Guaranty Agreement" in which he personally guaranteed

payment by Hestia on the Amended Note ("Guaranty").

It was after the default by Hestia and Sley under the Amended Note and the Guaranty, respectively, that Abbas discovered that *despite* the original representations made by Sley (and Hestia, when it executed the original promissory note in its name) that Hestia would receive or utilize the proceeds of the $1,000,000 loan funds for corporate purposes, and *despite* the subsequent representations made by Sley (and Hestia when it executed the Amended Note in its name) that Hestia would receive or utilize the proceeds of the $1,000,000 loan funds for corporate purposes and would repay the loan from pending corporate transactions, neither Hestia nor Sley ever had any such intention. Instead, at all relevant times, Defendants intended that the proceeds of the $1,000,000 loan funds were to be diverted from Hestia's account and used *personally* by Sley to pay for the expenses incurred by him and his wife for their wedding and honeymoon.

Abbas has therefore asserted claims for breach of the Amended and Restated Note executed by Hestia, breach of the Guaranty executed by Sley, breach of quasi-contract/*quantum meruit*, fraudulent inducement and promissory fraud (under California law which governs the Amended and Restated Note and Guaranty), and conspiracy to commit fraud.

## DEFENDANTS' MOTION

Defendants begin their Preliminary Statement by contending that "[t]his is a straightforward breach of contract case." Defendants' Memorandum of Law at p. 1 ("Defs. Memo"). This is not so, of course, and at the very next sentence Defendants begin to fudge the facts; they state falsely that "Plaintiff alleges that he made a $1 million loan *to Defendants* and that *Defendants did not pay it back* (emphasis added)." *Id.* Of course, this is not true – the very crux of the claims that Defendants seek to dismiss are Plaintiff's allegations that

8

Defendants induced Plaintiff, by false representations, to loan money *to Hestia for Hestia's business purposes,* which funds were then *wrongfully diverted to Sley for his personal purposes – i.e.,* to pay off his wedding vendors.  Plaintiff *never* alleged that he knowingly made a loan to Sley individually, and indeed, he would not have done so.

Nonetheless, Defendants have moved to dismiss the following counts of the Amended Complaint for the following alleged reasons:

1. Count II: Quasi-contract/*quantum meruit*.  Defendants contend that Plaintiff has alleged the existence of an enforceable agreement and therefore cannot be heard to plead in quasi-contract/*quantum meruit*.  Defendants also Janus-like admit, however, that a plaintiff can *indeed* plead quasi-contract/*quantum meruit*, but that in this case, they contend, Plaintiff did "not plead in the alternative or otherwise disavow the express contracts for purposes of the claim."  Defs. Memo at p. 4.

1. Count IV: Fraud in the inducement.  Defendants argue that this count does not meet the heighted pleading requirement under FRCP Rule 9.

2. Count V: Promissory fraud.  Defendants contend that the promissory fraud count is simply the breach of contract count "repurpose[d]," that California's "economic loss rule" precludes such a duplicative claim, and that this count does not meet the heighted pleading requirement under FRCP Rule 9.

3. Count VI: Conspiracy to commit fraud.  Defendants contend that conspiracy is not a separate cause of action (*id.* at p. 9), must be based upon an underlying tort, and that this count does not meet the heighted pleading requirement under FRCP Rule 9.  They also make the claim that it is impossible for Sley to have conspired with Hestia because a corporate employee cannot conspire with his corporation because "it requires that Mr. Sley to have

9

conspired with himself, which is impossible. ..." *Id.* at p. 10.

## POINT I:
## CALIFORNIA LAW PERMITS THE ALTERNATIVE
## PLEADING OF AN EXPRESS CONTRACT, AS WELL AS BOTH
## PROMISSORY FRAUD AND QUASI-CONTRACT/*QUANTUM MERUIT*

### A. Promissory Fraud

By California statute, a promise to do something implies the intention to perform; hence, where a promise is made without the intention to perform there is an implied misrepresentation of fact. *Lazar v. Superior Court,* (1996) 12 Cal. 4th 631, 638. *See* Cal Civ Code §1572(4) and Cal Civ Code § 1710(4) (both statutes say a promise without the intention to perform may constitute deceit). California substantive law does not bar a plaintiff from pursuing both fraud and tort claims arising from the same or similar facts.

In the seminal case on this point, *Lazar, supra,* curiously omitted from Defendants' Memorandum of Law, the California Supreme Court held that an action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract. *Id.* at 638. The Court held:

> "In such cases, the plaintiff's claim does not depend on whether the defendant's promise is ultimately enforceable as a contract. If it is enforceable, the plaintiff has a cause of action in tort as an alternative at least, and perhaps in some instances in addition to his cause of action on the contract." *Id.*

*Promissory fraud* is a subspecies of an action for fraud and deceit, the elements of which are: (a) a misrepresentation (false representation, concealment or nondisclosure); (b) knowledge of the falsity (or "scienter"); (c) intent to defraud, *e.g.*, to induce reliance; (d) justifiable reliance; and (e) resulting damages. *Lazar, supra* at 638; *Small v. Fritz Companies, Inc.* (2003) 30 Cal. 4th 167, 173. The rule in California is that a party who is fraudulently induced to execute a contract

10

can either rescind the contract and restore the consideration or can affirm the contract and recover damages for fraud. *Geraghty v. Shalizi* (2017) 8 Cal. App. 5th 593, 597. Accordingly, the fact that a claim for breach of contract exists says nothing whatsoever about whether a valid claim for promissory fraud exists. California courts often affirm awards for both contract and tort claims. *See Diamond Woodworks, Inc. v. Argonaut Ins. Co.* (2003) 109 Cal. App. 4th 1020 & *Waffer International Corp v. Khorsandi* (1999) 69 Cal. App 4th 1261, 1280 (rejecting argument that pursuing a contract claim barred plaintiff from pursuing a tort claim).

Conceptually, in cases of promissory fraud the promise made without an intent to perform constitutes the "false representation" - the first element of the cause of action for deceit. The necessary elements were properly pleaded here: Defendants impliedly promised to pay back the loan from corporate transactions since, they represented, it was purportedly a loan to Hestia and, from the circumstances, including their continued falsehoods about repayment and a fictitious underlying transaction, never intended to do.

Since both contract and tort claims may be pursued in the same case where a given set of facts entitles a plaintiff to recover on a tort theory and the same set of facts entitles him to recover on a contract theory, recovery cannot be had twice simply because the facts support recovery on either theory. *Shell v. Schmidt* (1954) 126 Cal. App. 2d 279, 292. Thus, while it is true that the Plaintiff may eventually face an election of remedies, under California law that election cannot be compelled prior to judgment. *Denevi v. LGCC* (2004) 121 Cal. App. 4th 1211, 1221; *Roam v. Koop* (1974) 41 Cal. App. 3d 1035, 1039. So, while Abbas cannot, of course, obtain a double recovery by alleging both tort and fraud claims, there is no prohibition against his simultaneous pursuit of both legal theories of recovery. Defendants' contention to the contrary is misplaced.

11

Additionally, despite Defendants' contention, promissory fraud is not barred in California under the "economic loss" doctrine. Curiously, Defendants do not cite the primary case of *Robinson Helicopter Co. v. Dana Corp.* (2004) 34 Cal. 4th 979, where the California Supreme Court held that the economic loss rule – where the plaintiff suffered only economic losses - did not bar separate claims in tort for fraud and intentional misrepresentation.[2] *See also County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal. App. 4th 292; *United Guar. Mortg. Indemn Co. v. Countrywide Fin. Corp.*, 660 F. Supp.2d 1163 (C.D. Ca. 2009).

In *Robinson Helicopter* the court held that a party can sue in tort if the tortious conduct is separate and apart from the breach itself. 34 Cal. 4th at 991. There, Dana's fraud consisted of supplying false certificates of conformance which deceived Robinson into accepting delivery. That fraud – supplying nonconforming parts - was separate from the mere breach of contract. Applying this distinction to the case at bar, the failure to repay the loan or honor the Guaranty is breach of contract, but the fraudulent or tortious act is distinct from mere contract performance or nonpayment. The tortious act was the fraud inducing the contract (either the first Note or the Amended Note). The completely false statements constitute fraud under California law (Cal Civil Code §§1709-1710).[3] Under this statute, there is a legal duty imposed on everyone not to

---

[2] That Defendants presumably know about *Robinson Helicopter* is demonstrated by their statement, at page 5, that "California's economic loss rule also prevents the law of contract and the law of tort from dissolving into one another in this manner" for which they cited to a case which took most of this famous quoted passage from the decision in *Robinson Helicopter*. *See Robinson Helicopter*, 34 Cal. 4th at 988.

[3] "A deceit, within the meaning of the last section, is either:**1.** The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; **2.** The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; **3.** The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, **4.** *A promise, made without any intention of performing it* (emphasis added)." Cal Civ Code section 1710.

"One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Cal Civ Code § 1709.

12

deceive another. One who deceives another with intent to induce him to alter his position is liable for any damage.

Thus, Defendant(s) were under a legal duty not to mislead or deceive Abbas with false statements about the proposed loan. That duty exists under the Civil Code independent of the duties imposed by this contract. Thus, Defendants (or, at a minimum, Sley) were under a legal duty to not deceive Abbas about the nature of the loan, the identity of the borrower or the use to which the borrowed funds would be put.

Under *Robinson Helicopter*, 34 Cal. 4th at 990, because the duty to not deceive another is a duty that exists outside of the contract, the tort claim is based upon a duty independent of the contract and is not barred by the economic loss rule. The instant Amended Complaint alleges both intentional conduct and an intent to deceive or harm the plaintiff. As the Court in *Robinson Helicopter* stated (quoting another California decision) "when one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort." *Id*. Both situations exist in the case at bar. While the nature of the fraud alleged in *Robinson Helicopter* is different, the concepts are the same.

Importantly, Abbas is not attempting to transform a "straightforward" breach into a tort – the evil sought to be prevented by the economic loss rule. The breach of contract itself is not evidence of fraudulent intent, but absent the fraud, there would clearly have been no contract. Fraudulent inducement has always been a tort (as evidenced by the Civil Code sections

---

*See also* Cal Civ Code section 1572: "Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: **1.** The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; **2.** The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; **3.** The suppression of that which is true, by one having knowledge or belief of the fact; **4.** A promise made without any intention of performing it; or, **5.** Any other act fitted to deceive.

discussed above), and intentionally deceiving another is and always has been a tort separate and distinct from contract. There must be something more than the mere breach or, as the court later said in *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group*, 143 Cal. App. 4th 1036, a person may not recover in tort for the breach of duties that merely restate contractual obligations. *Id.* at 1041. Thus, there is a clear distinction in this case between the false statements that constitute the fraud and the contractual obligation to repay the loan.

In contrast, that Sley successfully deceived Abbas and obtained a contract does not (and should not) immunize his tortious behavior – in fact, it establishes the elements of the tort such as Abbas's reliance on the deceit/false statements and his damages.

### B. Quasi-contract/*quantum meruit*

Defendants claim that a quasi-contract claim is precluded because "Plaintiff expressly alleges and sues on an express contract between the parties. ..." Defs. Memo at p. 1. This is misleading. In his Count I, Abbas has sued Hestia for breach of the Amended Note which Hestia alone was obligated on by its express terms, and in his Count III he has sued Sley for breach of the Guaranty he executed covering the Hestia loan.

Count II – quasi-contract/*quantum meruit* - alleges that both Defendants "enticed and fraudulently induced Abbas into making the $1,000,000 loan through false and misleading representations regarding the identity of the borrower, the commercial use of the loan proceeds and the Defendants' repayment of the loan," and were unjustly enriched, creating a quasi-contractual obligation which they breached "by refusing to repay to Abbas the principal amount of the loan and refusing to pay interest accrued thereon during the Defendants' use of the loan proceeds." Amended Complaint at pars. 46-48. Contrary to the implication of Defendants' statement, above, there was no one express contract to which Hestia and Sley were parties along

14

with Abbas. This is key because, at a minimum, the quasi-contract/*quantum meruit* claim against Sley on the Amended Note, and against Hestia on the Guaranty, must survive.

The Amended Note is an express contract only between Abbas and Hestia; the Guaranty is an express contract only between Abbas and Sley. It is clear that a quasi-contract/*quantum meruit* claim on the Amended Note is viable against Sley since he benefited from the loan directly and restitution may be awarded to Abbas in lieu of breach of contract damages as a matter of equity especially when Sley *procured the loan purportedly made to Hestia by fraud.* The same is true as against Hestia on the Guaranty, where Hestia was a clear tortfeasor in procuring the loan and guaranty.

Under California law, where a defendant obtains a benefit by fraud, duress or conversion or similar conduct, Plaintiff may choose to seek restitution on a quasi-contract theory. In such case, the law will imply a contract (or rather a quasi-contract) without regard to the parties' intent in order to avoid unjust enrichment by Defendant. *McBride v. Boughton* (2004) 123 Cal. App. 4th 379, 388.

Quasi-contracts are not based upon the parties' intentions, nor are they promises; they are obligations created by law for reasons of justice. Quasi-contract recovery is based upon a benefit accepted or derived for which the law implies an obligation to pay. *Weitzenkorn v. Lesser* (1953) 40 Cal. 2d 778, 794. While a quasi-contract claim cannot survive once an express contract is *proven*, it appears in this case that Defendants may attempt to allege that the contracts at issue are not valid or enforceable. When the pleader is in doubt about what can be established by the evidence, he or she may plead in the alternative. *Mendoza v. Continental Sales Co.* (2006) 140 Cal. App. 4th 1395, 1402.

This very issue was decided in *Newport Harbor Ventures LLC* (2016) 6 Cal. App. 5th 1207, where the Court held that the Plaintiff may plead in the alternative a claim for breach of contract and *quantum meruit*, but could not recover under both theories. *Id.* at 1223-24; *see also, Fagan v. U. S. Carpet Installation, Inc.*, 770 F. Supp. 2d 490, 496 (E.D.N.Y. 2011) (pleading in the alternative does not require pleader to identify allegations as alternative theories and alternative statements are sufficient under FRCP Rule 8(d)). In this way, should the Defendants' possible challenge to the validity of the contract(s) prevail, Plaintiff would remain free to pursue his quasi-contract theory.

Defendants contend that because Plaintiff has alleged the existence of an enforceable agreement he therefore cannot plead quasi-contract/*quantum meruit* (while simultaneously admitting that a plaintiff can *indeed* "theoretically" plead quasi-contract/*quantum meruit*). Defs. Memo at 3-4. In this case they contend that Plaintiff did "not plead in the alternative or otherwise disavow the express contracts for purposes of the claim." Defs. Memo at p. 4.

Defendants cite the case of *Pro Value Properties, Inc. v. Quality Loan Service Corp.* (2009) 170 Cal. App. 4th 579 as their central authority for the proposition that quasi-contract and *quantum meruit* claims are "inapplicable [where a plaintiff] alleges the parties entered into express contracts." Defs. Memo at p. 3. This quote cannot be found in that case decision, however.

Defendants fail to note that their *second* cited quote, *i.e.*, "[w]hen there is an express agreement, there is no need to imply a contract—i.e., quasi-contract," (which is found in *Pro Valuee* at pages 586-87), was taken from the *concurring opinion* in *Pro Value* - the majority opinion did not even address this issue. The quote is therefore of little or no precedential value. Most importantly, Defendants also fail to point out that the concurring Justice cited as authority for this quote the case of *McBride v. Boughton* (2004) 123 Cal. App. 4th 379, which Defendants

16

failed to cite at all in their Memorandum. In *McBride* the Court stated, at page 388, that "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, **but it was procured by fraud or is unenforceable or ineffective for some reason** (emphasis added)." Defendants never mention this emphasized part of the quote, which is diametrically opposed to Defendants' argument that Plaintiff cannot maintain his quasi-contract claim.

The only other case cited by Defendants for their incorrect proposition is *Durell v. Sharp Healthcare* (2010), 183 Cal. App. 4th 1350, which at page 1370 *sets forth the identical quote from the omitted case of McBride.  Id.*  It appears that Defendants have cited incomplete statements taken from an omitted case which found its way into a concurring opinion with little or no precedential value.

Defendants finally concede, in the last paragraph of their Point I (Defs. Memo at p. 4), that a plaintiff can "theoretically" indeed plead quasi-contract/*quantum meruit* in the alternative to an express contract.  As discussed above, the Court in *McBride*, however, held that this is not merely theoretical.  Moreover, that Defendants argue that Plaintiff did not plead *in the alternative* an express contract (Count I) and quasi-contract/quantum meruit (Count II) is disingenuous because (1) all counts in a pleading are considered pleaded alternatively (FRCP Rule 8); and (2) in his letter to the Court opposing Defendants' request for permission to make this motion, Plaintiff expressly stated "based on pre-complaint communications Defendants may attempt top contend that the express contracts are invalid."[4]

---

[4] Plaintiff withdrew originally pleaded Count III and has re-pleaded the claim as an alternative claim for an implied or quasi-contract. The repleaded claim is important because, based on pre-complaint communications Defendants may attempt to contend that the express contracts are invalid.  While Plaintiff vigorously disputes that contention, he wishes to plead a quasi-contract claim in the alternative in the unlikely event Defendants succeed in challenging the validity of the express contracts.  Alternative pleadings are authorized by Rule 8(d)(2) of the Federal Rules of Civil Procedure.  Moreover, in the event that the Court grants the motion to the extent that it dismisses Count II sounding in implied or quasi-

17

Plaintiff has clearly pleaded existing and enforceable express contracts, and it is patently absurd for Defendants to argue that for Count II to be sufficiently pleaded Plaintiff must disavow what he considers express, enforceable contracts. Indeed, it is only in the event that in their eventual Answer the *Defendants* "disavow the express contracts" (as anticipated) that the quasi-contract/*quantum meruit* count is necessary.

### POINT II:
### FRAUD IN THE INDUCEMENT HAS BEEN
### ADEQUATELY AND SUFFICIENTLY PLEADED

Fraud in the inducement occurs when the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable. *Rosenthal v. Great Western Financial Securities Corp.* (1996) 14 Cal. 4th 394, 415.

Here, Abbas was induced to enter into the promissory note by Defendants' explicit false statements that the funds were to be used for a pending, profitable corporate transaction by Hestia. Moreover, the very proffer to Abbas by Defendants of the original note and the Amended Note identifying *Hestia* as the named borrower is incontestable evidence that that Defendants, jointly and severally, misrepresented who the borrower was and the source of the funds purportedly to be used for repayment, since Sley's emails show that Defendants intended that Sley was to use and did use the funds for his purely personal wedding expenses, and not for Hestia corporate business.[5]

---

contract based upon Defendants' claim that Plaintiff pleaded an enforceable contract, then in that event, (1) Defendants should be precluded from pleading that the contract is unenforceable, or (2) Plaintiff should be permitted to reinstate his Count II sounding in implied or quasi-contract, and that is hereby respectfully requested.

[5] Paragraph 37 of the Amended Complaint states: "After the default by Hestia and Sley under the Amended Note and Guaranty, Abbas discovered a May text message from Sley to Abbas' colleague, that

18

Plaintiff would never have loaned money to Defendants in order to finance Sley's wedding and honeymoon, which Defendants implicitly acknowledged through their scheme to obscure the true purpose of the funds.  The entire premise used to induce Abbas to make the loan was a fabrication. The requisite elements - a false statement, scienter, an intent to defraud, reliance and damages - are all present in the Complaint, and the numerous Sley emails are as specific as can be possible.

**POINT III**
**CIVIL CONSPIRACY TO COMMIT**
**FRAUD HAS BEEN SUFFICIENTLY PLEADED**

The elements of civil conspiracy are (1) the formation and operation of the conspiracy; (2) wrongful conduct in furtherance of the conspiracy and (3) damages from the wrongful conduct. *Contreras v. Dowling* (2016) 5 Cal. App. 4th 394, 416.

It is correct that California does not allow civil conspiracy as a "stand alone" or independent tort, but Defendants incorrectly state that civil conspiracy is not a "separate cause of action." Defs. Memo at p. 9.  The seminal case in this area is *Applied Equipment Corp. v. Litton Saudi Arabia Ltd* (1994) 7 Cal. 4th 503, which held that the liability arising from conspiracy presupposes that the co-conspirator is legally capable of committing the tort, *i.e.*, that he or she owes a duty to the plaintiff.  *Id.* at 511. Before one can be liable for civil conspiracy, he must be capable of being individually liable for the underlying wrong as a matter of substantive tort law. He must owe a legal duty of care to the plaintiff.  *Chavers v. Gatke Corp.* (2003) 107 Cal. App.4th 606, 611-12.

---

Sley stated that, with respect to the loan of $1,000,000, 'I need it in JPM to pay f _ _ _ ing wedding vendors ASAP.'"

Thus, as long as both Defendants are capable of being individually liable for the tort alleged – fraud - a civil conspiracy for that tort may be asserted. As set forth in Point IV below, California law has long held that an individual who is not acting on a corporate entity's behalf can conspire with the corporation in furtherance of his or her individual advantage, thus, the civil conspiracy tort may be asserted.

**POINT IV**
**A CORPORATION'S EMPLOYEE OR AGENT CAN CONSPIRE WITH THE CORPORATION WHILE ACTING FOR HIS PERSONAL ADVANTAGE**

Defendants also assert, purporting to pull a verbatim quote from the case *Zumbrun v. Univ. of S. Cal.* (1972) 25 Cal. App 3d 1, that "[a]gents or employees of a corporation cannot conspire with the corporation while acting in their official capacities on behalf of the corporation." Defs. Memo at p. 10. However, quite shockingly, Defendants truncated that quote in their brief, thereby omitting (without so noting to the Court) the final words of the quoted sentence which goes on to say "rather than as individuals acting for their individual advantage." This silent omission <u>entirely changes</u> the meaning of the sentence and the proposition of law.

For the Court's convenience, the *full and correct* quote from *Zumbrun* is: "agents or employees of a corporation cannot conspire with the corporation while acting in their official capacities on behalf of the corporation **rather than as individuals acting for their individual advantage** (emphasis added)."

The words omitted by Defendants – if added back into the quote to make it accurate – unsurprisingly <u>negates</u> Defendants' argument, since in the instant case it is explicitly alleged that Hestia, and Sley, while an officer and shareholder of Hestia, falsely and fraudulently obtained the loan funds *not to benefit Hestia but as an individual acting for his own advantage, i.e., to pay for his wedding and honeymoon.* Despite their false and fraudulent statements made to induce Plaintiff

20

to loan the funds, Defendants clearly did not act on behalf of the corporation, or use the funds for the corporation's benefit.  Even today, Defendants do not set forth the alleged corporate purposes for which the funds were used. Since Defendants were acting to advance Sley's purely personal, private interests, Sley can be liable for conspiring with the corporation to commit this fraud.

Defendants similarly take inappropriate liberties with the case of *Black v. Bank of Am. N.T. & S.A.* (1994) 30 Cal. App. 4th 1, 6, claiming that it stands for the proposition that "California courts have also explained that a corporation is a legal fiction that can only act through its employees and agents, and employees and agents cannot conspire with their corporation." Defs. Memo at p. 10.   However, the *Black* Court *actually* stated that "It has long been the rule in California that "[] [a]gents and employees of a corporation cannot conspire with their corporate principal or employer **where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage** (emphasis added)."

## CONCLUSION

For the reasons set forth above, Defendants' motion must be denied in its entirety, together with any other relief as may be just and proper.

Date:  February 11, 2019
       New York, New York

FISHERBROYLES LLP

By: s/ Richard B. Cohen

Richard B. Cohen
Christina Bost Seaton
(212) 247-6122
(203) 887-4665
Richard.Cohen@FisherBroyles.com
Christina.BostSeaton@FisherBroyles.com